09-154
WINDMILL LAKES IV CONDOMINIUM,
ASSOCIATION, INC.

      Plaintiff

v.

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA

      Defendant.

_____/

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CIVIL DIVISION

CASE NO. **10  21461**

FLORIDA BAR NO. 248886

A TRUE COPY **02**

MAY 1 9 2010

HOWARD C. FORMAN
CLERK OF CIRCUIT COURT
BROWARD COUNTY, FL

## COMPLAINT

Windmill Lakes IV Condominium Association, Inc. (hereinafter Windmill) sues

Travelers Casualty and Surety Company of America (hereinafter Travelers) and says:

    1. This is an action for declaratory relief brought pursuant to F.S. 86.011 et, esq.

    2. Plaintiff Windmill is a Florida corporation located and doing business in Broward

County, Florida.

    3. Defendant Travelers is a foreign corporation doing business in Broward County,

Florida.

    4. Defendant Travelers issued a Non Profit Management and Organization Liability

Insurance Policy to Plaintiff Windmill with effective dates of August 6, 2008 to August 6, 2011,

a copy of the policy being attached hereto as Exhibit "A".

    5. Plaintiff hired a roofing company Timberoof Roofing Co. (hereinafter Timberoof) to

repair the roofs of the condominium buildings.

    6. As part of the contract, all disputes were to be resolved by way of binding arbitration.

    7. Because of substandard work by Timberoof Roofing Co. it was discharged and another

roofing company was hired to complete the work.

8.  A dispute as to the job arose under the contract between Plaintiff and Defendant and binding arbitration was invoked.

9.  The initial arbitration hearing was scheduled for November 18, 2008 with notice of the hearing sent to Vicki Feicht the registered agent for Plaintiff.

10.  At that time Rey Valls, president of Plaintiff was outside the country and could not be reached.

11.  Ms. Feicht forwarded all notices to Mr. Valls at his address at the condominium.

12.  As a result no one representing Plaintiff appeared at the first scheduled arbitration hearing on November 18, 2008.

13.  The arbitrators continued the hearing and reset it for December 8, 2008.

14.  Once again notice was sent to Vicki Feicht who forwarded all communications to Rey Valls, who was still out of the country.

15.  On December 5, 2008 counsel for Timberoof phoned Vicki Feicht and informed her of the arbitration commencing December 8, 2008.  Ms. Feicht advised counsel she was only the registered agent and that Rey Valls was out of the country and no one was available to represent the Plaintiff at the hearing.

16.  No representative of Plaintiff attended the arbitration and Ms. Feicht was called on December 8, 2008 with a message to call the arbitrator M. Ross Shulmiser.  She called him twice without anyone picking up the phone.

17.  The Plaintiff was negligent in that it failed to have set up a chain of command to accomplish association business in the absence of Rey Valls.

Page 2 of 4

18. Furthermore, Plaintiff assumed that the law firm of Jose C. Marrero and Associates, P.A. was handling the defense of the arbitration but failed to contact Jose C. Marrero and Associates, P.A. to confirm its representation and knowledge of the pending arbitration hearing.

19. As a result an arbitration award in the sum of $311,000 was entered against Plaintiff and in favor of Timberoof.

20. Plaintiff notified Defendant of the entry of the award and potential claim and that it filed a Motion to Vacate and Set Aside Arbitration Award and has performed all conditions precedent under the policy or they have been waived by Defendant.

21. Notwithstanding, on May 6, 2009 Defendant issued a denial of coverage letter (attached as Exhibit "B"), with the denial based upon late notice.

22. Plaintiff is in doubt as to its rights under the policy of insurance issued by Defendant and there is a bona fide dispute between the parties as to whether there is late notice and Plaintiff is entitled to have its doubt removed and Plaintiff is not merely asking for legal advice.

23. Plaintiff has had to retain the law firm of Albert E. Moon, P.A. to represent it in this action and owes it a fee for its services.

Wherefore Plaintiff requests that this Court:

    a. Take jurisdiction of the parties and the subject matter of this dispute, and

    b. Declare whether the claim of late notice is a breach of the policy and

    c. Provide for any other relief which may be available and

    d. Award to Plaintiff all costs of this action and attorney fees pursuant to F.S. §627.428.

## COUNT II -BREACH OF CONTRACT

24.  Plaintiff realleges and incorporates herein the allegations contained in paragraphs 2 through 22.

25.  As a result of Defendant's denial of coverage, Defendant has failed to provide a defense under its policy and Plaintiff has been required to retain Gary Glasser, P.A. to represent it in bringing its motion to vacate the arbitration award and has incurred a fee for his services.

26.  In addition Gary Glasser, P.A. has filed a notice of appeal in the Fourth District Court of Appeal of the Final Judgment in this matter and Plaintiff owes Gary A. Glasser, P.A. a fee for his services.

27.  That the Judgment entered against Plaintiff and in favor of Timberoof in the amount of $311,000 should be paid by Defendant but Defendant has denied coverage therefore under the policy and has breached the policy.

28.  Plaintiff has had to retain the law firm of Albert E. Moon, P.A. to represent it in this action and owes it a fee for its services.

Wherefore Plaintiff, Windmill demands damages from Defendant Travelers along with all costs of this action, prejudgment interest and attorney fees pursuant to F.S.§627.428, and demands trial by jury of all issues to triable as of right.

ALBERT E. MOON, P.A.
Attorney for Plaintiff
19 West Flagler Street
Suite 705
Miami, Florida 33130
Telephone No.  305-379-7362
Fax No.  305-379-7365

ALBERT E. MOON, ESQUIRE

Page 4 of  4



August 12, 2008

Billy Sturdivant
3450 Buschwood Park Drive
Suite 110
TAMPA, FL 33618-4446
Phone:(813) 888-5200 x29
Fax:(813) 885-9030
Email:BSTURDIV@Travelers.com

NEIL SCHLUSSEL
CORPORATE INSURANCE ADVI (0CHN20)
100 NE 3RD AVE
STE 1000
FT LAUDERDALE, FL 33301

**This is an Agency Billed Policy.**

This is the Renewal for:

**WINDMILL LAKES IV CONDOMINIUM ASSOCIATION, INC.
C/O VICTORY ACCOUNTING SVC
PO BOX 243399
BOYNTON BEACH, FL 33424**

Product Type: D & O - HOA/Condo
Policy Number: 104979524
Total Policy Premium: $2,928.75

Policy Period: August 6, 2008     to  August 6, 2011
Billing Period: August 6, 2008     to  August 6, 2011
Trans Effective Date: August 6, 2008
Commission-Percentage: 15%
Special Commission: $0.00

Countersignature Commission: $0.00
Countersignature Rate: 0%

|  |  |  |  | Premium Years |  |
| --- | --- | --- | --- | --- | --- |
| Coverage | Liability | Deductible | Year 1 | Year 2 | Year 3 |
| D & O - HOA/Condo | $1,000,000 | $1,000 | $936.00 | $936.00 | $936.00 |
| Surcharge: | | | $40.25 | $40.25 | $40.25 |
| Tax: | | | $0.00 | $0.00 | $0.00 |
| Combined Premium: | | | $976.25 | $976.25 | $976.25 |

Comments:
Thank you for placing your business with us.

PE-004 (1-98)

# POLICY DISCLOSURE NOTICE -
## TERRORISM RISK INSURANCE ACT OF 2002

On December 26, 2007, the President of the United States signed into law amendments to the Terrorism Risk Insurance Act of 2002 (the "Act"), which, among other things, extend the Act and expand its scope. The Act establishes a program under which the Federal Government may partially reimburse "Insured Losses" (as defined in the Act) caused by "acts of terrorism". An "act of terrorism" is defined in Section 102(l) of the Act to mean any act that is certified by the Secretary of the Treasury - in concurrence with the Secretary of State and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The Federal Government's share of compensation for Insured Losses is 85% of the amount of Insured Losses in excess of each Insurer's statutorily established deductible, subject to the "Program Trigger", (as defined in the Act). In no event, however, will the Federal Government or any Insurer be required to pay any portion of the amount of aggregate Insured Losses occurring in any one year that exceeds $100,000,000,000, provided that such Insurer has met its deductible. If aggregate Insured Losses exceed $100,000,000,000 in any one year, your coverage may therefore be reduced.

Please note that no separate additional premium charge has been made for the terrorism coverage required by the Act. The premium charge that is allocable to such coverage is inseparable from and imbedded in your overall premium, and does not include any charge for the portion of losses covered by the Federal Government under the Act. The charge is no more than one percent of your premium.

---

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number: 104979524

ILT-1018 Rev. 01-08  Printed in U.S.A.                              Page 1 of 1
©2008 The Travelers Companies, Inc. All Rights Reserved

# SPECIMEN

ISSUED BY: Travelers Casualty and Surety Company of America            POLICY NO: 104979524

ISSUED TO: WINDMILL LAKES IV CONDOMINIUM ASSOCIATION, INC.

FLORIDA

IMPORTANT NOTICE

To obtain information or make a complaint:

You may contact your agent; or

You may call the Travelers Indemnity Company's telephone number for information or to make a complaint at:

1-860-954-2382

You may write us at:

Travelers Indemnity Company
Consumer Affairs
One Tower Square, 3PB
Hartford, CT 06183-9079

**PREMIUM OR CLAIM DISPUTES:**

Should you have a dispute concerning your premium or about a claim should contact the agent or the company first.

**ATTACH THIS NOTICE TO YOUR POLICY**

This notice is for information only and does not become a part or condition of the attached document.

CIRJ 71121 (08/96)

# SPECIMEN

**TRAVELERS** | NON-PROFIT MANAGEMENT AND ORGANIZATION LIABILITY
INSURANCE POLICY

DECLARATIONS                                    POLICY NO. 104985

Travelers Casualty and Surety Company of America
Hartford, CT 06183

(Herein, the "Insurer")

**THIS IS A CLAIMS MADE AND REPORTED POLICY WITH DEFENSE COSTS INCLUDED IN THE LIMIT OF LIABILITY.
PLEASE READ THE ENTIRE POLICY CAREFULLY.**

NOTICE:  THIS POLICY APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE "INSUREDS" DURING THE "POLICY PERIOD" AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN.  THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED AS "DEFENSE COSTS."  ANY "DEFENSE COSTS" THAT ARE INCURRED SHALL BE APPLIED AGAINST THE APPLICABLE RETENTION.  THE INSURER SHALL HAVE THE RIGHT AND DUTY TO DEFEND ANY CLAIM AGAINST THE INSUREDS UNDER THIS POLICY.

ITEM 1.        **INSURED ORGANIZATION'S NAME and PRINCIPAL ADDRESS:**

       WINDMILL LAKES IV CONDOMINIUM ASSOCIATION, INC.
       C/O VICTORY ACCOUNTING SVC
       PO BOX 243399
       BOYNTON BEACH, FL 33424

ITEM 2.        **POLICY PERIOD:**

    (a) From August 6, 2008        (b) To August 6, 2011        at 12:01 a.m.
          Local Time both dates at the Principal Address stated in ITEM 1

ITEM 3.        **LIMIT OF LIABILITY (Inclusive of Defense Costs):**

    $1,000,000.00 maximum aggregate Limit of Liability for all Claims first made in the Policy Period.

ITEM 4.        **RETENTION:**

    (a) No Retention shall apply to Non-Indemnified Loss

    (b)      $1,000.00 all Indemnified Loss.

ITEM 5.        **PREMIUM:**

       $2,928.75 prepaid premium for the Policy Period.

    **NOTICE: A state surcharge applies. Please refer to your billing statement.**

ITEM 6.        **PREMIUM FOR DISCOVERY PERIOD:** $696.99

ITEM 7.        **LENGTH OF DISCOVERY PERIOD:**        365 days.

ITEM 8.        **NOTICE REQUIRED TO BE GIVEN TO THE INSURER SHALL BE ADDRESSED TO:**

    Travelers Bond & Financial Products Claim
    One Tower Square, 2S2
    Hartford, CT 06183

ITEM 9.        **PENDING AND PRIOR LITIGATION DATE:** August 6, 2005

# SPECIMEN

| ITEM 10. | ENDORSEMENTS ATTACHED AT ISSUANCE: |
|---|---|

ILT-1018 01-08, 71121 08-96, 71120 08-96, 72023 01-03, 70064 04-00, ILT-1067 01-08, ILT-1021 10-04, 70008 12-02, 70003FL 08-98, 70002 08-98, 70007 02-02, 70004 04-00, 72047 08-96

These Declarations, the completed signed Application and their attachments and any materials submitted therewith, and Policy form 72001 (06/98) with Endorsements shall constitute the contract among the Insurer and the Insureds ("Policy").

---

Countersigned By (if required)

CIRI 72000 (06/98)

# SPECIMEN

Travelers Casualty and Surety Company of America
Hartford, CT 06183
(Herein, the "Insurer")

THIS IS A CLAIMS MADE AND REPORTED POLICY
WITH DEFENSE COSTS INCLUDED IN THE LIMIT OF LIABILITY.
PLEASE READ THE ENTIRE POLICY CAREFULLY.

NON-PROFIT MANAGEMENT AND ORGANIZATION LIABILITY INSURANCE POLICY
RENEWAL CERTIFICATE

POLICY NO. 104979524

NOTICE: THE POLICY FOR WHICH APPLICATION IS MADE APPLIES, SUBJECT TO ITS TERMS, ONLY
TO ANY "CLAIM" FIRST MADE OR DEEMED MADE AGAINST THE "INSURED" DURING THE POLICY
PERIOD.  THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS WILL BE
REDUCED BY THE AMOUNTS INCURRED AS "DEFENSE EXPENSES" AND "DEFENSE EXPENSES" WILL
BE APPLIED AGAINST THE RETENTION AMOUNT.

| | |
|---|---|
| ITEM 1. | **INSURED ORGANIZATION'S NAME and PRINCIPAL ADDRESS:**<br>WINDMILL LAKES IV CONDOMINIUM ASSOCIATION, INC.<br>C/O VICTORY ACCOUNTING SVC<br>PO BOX 243399<br>BOYNTON BEACH, FL 33424 |

ITEM 2.      **POLICY PERIOD:**

(a) From August 6, 2008      (b) To August 6, 2011      at 12:01 a.m. Local Time both
dates at the Principal Address stated in ITEM 1

ITEM 3.      **PREMIUM:**                $2,928.75  prepaid premium for the **Policy Period**.

ITEM 4.      **PREMIUM FOR DISCOVERY PERIOD:** $696.99

ITEM 5.      **ENDORSEMENTS ATTACHED TO THIS POLICY AT RENEWAL:**
ILT-1018 01-08, 71121 08-96, 71120 08-96, 72023 01-03, 70064 04-00, ILT-1067
01-08, ILT-1021 10-04, 70008 12-02, 70003FL 08-98, 70002 08-98, 70007 02-02,
70004 04-00, 72047 08-96

IN WITNESS WHEREOF, the Company/Insurer has caused this renewal document to be signed by its authorized officers at Hartford,
CT.

Executive Vice President                              Corporate Secretary
In consideration of the stated renewal premium, the policy is renewed for the **Policy Period** indicated.

CIRI 70035 (08/98)

# SPECIMEN

TRAVELERS J

**NON-PROFIT MANAGEMENT AND ORGANIZATION LIABILITY INSURANCE POLICY**

Travelers Casualty and Surety Company of America
Hartford, CT 06183
(Herein, the "Insurer")

**THIS IS A CLAIMS MADE AND REPORTED POLICY WITH DEFENSE COSTS INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

In consideration of the payment of the premium and in reliance on all statements made and information furnished to the Insurer, including the statements made in the Application and its attachments and any materials submitted therewith, all of which are made a part hereof, the Insurer and the Insureds agree as follows:

## I. INSURING AGREEMENTS

### Liability Coverage

A. The Insurer will pay on behalf of the Insureds Loss up to the available maximum aggregate Limit of Liability set forth in Item 3 of the Declarations which is incurred by the Insureds as the result of any Claim first made against the Insureds and reported in writing to the Insurer during the Policy Period or the Discovery Period, if purchased, for a Wrongful Act.

### Defense Coverage

B. The Insurer shall have the right and duty to defend any Claim covered by this Policy, even if any of the allegations are groundless, false or fraudulent. The Insurer's duty to defend shall cease upon exhaustion of the Limit of Liability set forth in Item 3 of the Declarations.

The Insureds agree to provide the Insurer with all information, assistance and cooperation which the Insurer reasonably requests and agree that in the event of a Claim the Insureds will do nothing that may prejudice the Insurer's position or its potential or actual rights of recovery.

The Insureds agree not to settle any Claim, incur any Defense Costs or otherwise assume any contractual obligation or admit any liability with respect to any Claim without the Insurer's written consent, which shall not be unreasonably withheld. The Insurer shall not be liable for any settlement, Defense Costs assumed obligation or admission to which it has not consented.

The Insurer may, with the written consent of the Insureds, make any settlement of a Claim it deems expedient. If the Insureds withhold consent to such settlement, the Insurer's liability for all Loss on account of such Claim shall not exceed the amount for which the Insurer could have settled such Claim plus Defense Costs accrued as of the date such settlement was proposed in writing by the Insurer.

## II. DEFINITIONS

A.   Application means all signed, written applications including any attachments thereto and materials submitted therewith, for this Policy and for any policy in an uninterrupted series of policies issued by the Insurer of which this Policy is a renewal or replacement, all of which shall be deemed attached hereto and incorporated herein.

B.   Claim means:

  1)   a written demand for monetary damages;

  2)   a civil proceeding commenced by the service of a complaint or similar pleading;

  3)   a criminal proceeding commenced by a return of an indictment; or

  4)   a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document,

  against an Insured for a Wrongful Act, including an appeal therefrom.

C.   Defense Costs means that part of Loss consisting of reasonable costs, charges and expenses (including but not limited to attorney fees) incurred in defending or investigating Claims, including appeals therefrom. Defense Costs does not include salaries, wages, overhead or benefit expenses of any Insured Person.

D.   Discovery Period means either (1) that period described in Section III(C)(1) of this Policy and Item 7 of the Declarations, or (2) that period in which coverage under this policy is extended pursuant to Section V(C) of this Policy.

E.   Financial Insolvency means the status of the Insured Organization as a result of the appointment of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate the Insured Organization, or the Insured Organization becoming a debtor in possession.

F.   Indemnified Loss means (1) Loss which the Insured Organization becomes legally obligated to pay as the result of Claims made against the Insured Organization, and (2) Loss for which the Insured Organization grants indemnification to any Insured Person.

CIRI 72001 (06/98) Page 1 of 6

**SPECIMEN**

G.   Insured(s) means the Insured Organization and the Insured Persons.

H.   Insured Organization means the Parent Organization and its Subsidiaries.

I.   Insured Persons means any persons who were, now are, or shall become:  (1) duly elected or appointed directors, trustees or officers of any Insured Organization; or (2) employees, members of duly constituted committees or volunteers of any Insured Organization that is a non-profit entity.

J.   Loss means the total amount excess of the applicable Retention which any Insured becomes legally obligated to pay as the result of all Claims first made against any Insured during the Policy Period for Wrongful Acts including, but not limited to, damages, judgments, settlements and Defense Costs.  Loss does not include (1) punitive or exemplary damages, (2) the multiple portion of any multiple damage award, (3) criminal or civil fines or penalties imposed by law, (4) taxes, (5) any amount not indemnified by the Insured Organization for which the Insured is absolved from payment by reason of any covenant, agreement or court order, and (6) matters uninsurable under the law pursuant to which this Policy is construed.

K.   Non-Indemnified Loss means all Loss other than Indemnified Loss.

L.   Parent Organization means the organization designated in Item 1 of the Declarations.

M.   Policy Inception Date means the date stated in Item 2(a) of the Declarations.

N.   Policy Termination Date means the date stated in Item 2(b) of the Declarations or the date of any cancellation or non-renewal of this Policy, whichever is earlier.

O.   Policy Period means the period between the Policy Inception Date and the Policy Termination Date.

P.   Pollutants means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or a state, county, municipality or locality counterpart thereof.  Such substances shall include, but not be limited to, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. Pollutants shall also mean any other air emissions, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, electric or magnetic or electromagnetic fields and any noise.

Q.   Related Wrongful Acts means Wrongful Acts that arise out of, are based on, relate to or are in consequence of, the same facts, circumstances or situations.

R.   Subsidiary means:

1)   any non-profit entity with respect to which the Insured Organizations, directly or indirectly, in any combination, had on or prior to the Policy Inception Date the ability to control or direct its managerial decisions or to select a majority of its trustees or directors, whether through operation of law or by reason of membership, securities ownership, agreement, charter, certificate of incorporation, or by-laws;

2)   any non-profit entity with respect to which the Insured Organizations, directly or indirectly, in any combination, acquires by purchase, creation or otherwise during the Policy Period the ability to control or direct its managerial decisions, or to select a majority of its trustees or directors, whether through operation of law or by reason of membership, securities ownership, agreement, charter, certificate of incorporation, or by-laws.

If the annual revenues for the most recent fiscal year of any non-profit entity described in paragraph 2) above exceed 20% of the consolidated revenues for the most recent fiscal year of the Parent Organization and its Subsidiaries, the Parent Organization shall give written notice of such acquisition to the Insurer as soon as practicable, but in no event later than 90 (90) days after the effective date of such acquisition, together with such information as the Insurer may require.  This policy shall not afford any coverage with respect to such non-profit entity and its Insured Persons following such ninety (90) day period unless (1) the Insurer in its sole discretion agrees by endorsement to this policy to afford such coverage, and (2) the Insureds pay an additional premium and accept any special policy terms and conditions required by the Insurer.

S.   Wrongful Act means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed or attempted, or allegedly committed or attempted, by the Insured Organization or by one or more Insured Persons, individually or collectively, in their respective capacities as such, including but not limited to any Wrongful Employment Practices.

T.   Wrongful Employment Practices means any actual or alleged: (1) wrongful dismissal, discharge or termination of employment; (2) employment related misrepresentation; (3) violation of employment laws; (4) sexual or workplace harassment of any kind; (5) employment discrimination; (6) wrongful failure to employ or promote; (7) wrongful discipline; (8) wrongful deprivation of career opportunity including a wrongful failure to hire or promote; (9) failure to grant tenure; (10) negligent employment evaluation; and/or (11)

failure to provide adequate workplace or employment policies and procedures.

### III. EXTENSIONS

A.   ESTATES, HEIRS, LEGAL REPRESENTATIVES, ETC.

In the event of the death, incapacity or bankruptcy of any Insured Person, any claim against his or her estate, heirs, legal representatives or assigns based on actual or alleged Wrongful Acts of such Insured Person shall be deemed to be a Claim against such Insured Person for the purposes of this Policy.

B.   MARITAL ESTATE

Subject otherwise to the terms hereof, this Policy shall cover Loss arising from any claim made against the lawful spouse (whether such status is derived by reason of statutory, common or other law of any applicable jurisdiction in the world) of an Insured Person

CIRI 72001 (06/98) Page 2 of 6

# SPECIMEN

for claims arising solely out of his or her capacity as the spouse of an Insured Person, including such claims that seek damages recoverable from marital community property, property jointly held by the Insured Person and the spouse, or property transferred from the Insured Person to the spouse; provided, however, that this extension shall not afford coverage for any claim for any actual or alleged Wrongful Act of the spouse. All terms, conditions and other provisions of this Policy, inclusive of any provision relative to the applicable Retention, which would be applicable to Loss incurred by the Insured Person in such claim shall also apply to Loss incurred by the spouse in such claim.

C.   DISCOVERY PERIOD

1)   If the Insurer or the Parent Organization cancels, fails, or refuses to renew this Policy for any reason other than the Insured's non-payment of premium or non-compliance with the terms and conditions of this Policy, then the Parent Organization shall have the right, on payment of the additional premium shown in Item 6 of the Declarations, to an extension of the coverage granted by this Policy for any Claim first made against any Insured during the period specified in Item 7 of the Declarations, but only with respect to any actual or alleged Wrongful Act committed or allegedly committed before the Policy Termination Date.

2)   As a condition precedent to the right to purchase the Discovery Period, the total premium for this Policy must have been paid. The right to purchase the Discovery Period shall terminate unless written notice of the election of the Discovery Period is received by the Insurer by certified mail, prepaid express courier or facsimile within thirty (30) days after the Policy Termination Date, together with full payment of the premium for the Discovery Period. In the event that such notice and premium payment are not so given to the Insurer, there shall be no right to purchase the Discovery Period at any later date.

3)   If the Discovery Period is purchased, the entire premium for the Discovery Period shall be deemed earned at its commencement.

4)   The purchase of the Discovery Period shall not increase or reinstate the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations.

5)   If the coverage extension described in Section V(C) of this Policy is purchased, the Insureds shall not be entitled to also purchase the coverage extension described in this Section III(C).

## IV. EXCLUSIONS

The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any of the Insureds:

1)   for:

(a)   bodily injury, sickness, disease or death of any person, or any damage to or destruction of any tangible property including loss of use thereof; or

(b)   mental anguish or emotional distress, however this subpart (b) shall not apply with respect to any Claim for Wrongful Employment Practices;

2)   based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance or situation which has been the subject of any notice given under any other policy of which this Policy is a renewal or replacement;

3)   based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving (a) the actual, alleged or threatened discharge, release, escape or disposal of Pollutants into or on real or personal property, water or the atmosphere; or (b) any direction or request that the Insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize Pollutants, or any voluntary decision to do so; including but not limited to any Claim for financial loss to the Insured Organization, its members or security holders or its creditors based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the matters described in (a) or (b) of this exclusion;

4)   for an actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974 and amendments thereto or similar provisions of any federal, state or local statutory law or common law upon fiduciaries of any pension, profit sharing, health and welfare or other employee benefit plan or trust established or maintained for the purpose of providing benefits to employees of the Insured Organization;

5)   based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any litigation against any Insured on or prior to the Pending and Prior Litigation Date set forth in Item 9 of the Declarations, or any fact, circumstance or situation underlying or alleged therein;

6)   brought or maintained by or on behalf of the Insured Organization, except a Claim that is brought and maintained totally independently of, and totally without the solicitation, assistance, participation, or intervention of any officer, director or trustee of the Insured Organization;

7)   for Wrongful Acts by any Insured Person as a director, officer or employee of any entity other than the Insured Organization, even if such service is directed or requested by the Insured Organization;

8)   for any Wrongful Act committed or allegedly committed by any Insured Organization or its Insured Persons while such Insured Organization was not a Subsidiary; however, if before or during the Policy Period an organization ceases to be a Subsidiary, coverage with respect to such Subsidiary and its Insured Persons shall continue until termination of this Policy but only with respect to Claims for Wrongful Acts taking place while such organization was a Subsidiary;

# SPECIMEN

9)   for liability under or breach of any oral, written or implied contract or agreement, or for liability of others assumed by the Insured under any such contract or agreement; however, this exclusion shall not apply to the extent (a) the Insured would have been liable in the absence of such contract or agreement; or (b) the Claim is a Claim for Wrongful Employment Practices;

10)  brought about or contributed to by any deliberately fraudulent or dishonest act or omission or any purposeful violation of any statute or regulation by such Insured; however, this exclusion shall not apply unless a judgment or other final adjudication adverse to such Insured establishes such a deliberately fraudulent or dishonest act or omission or purposeful violation;

11)  for such Insured gaining in fact any profit, remuneration or advantage to which such Insured was not legally entitled; or

12)  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the ownership, control, management or operations of any for-profit Subsidiary of the Insured Organization; however, this exclusion shall not apply with respect to any for-profit Subsidiary that is an Insured Organization pursuant to an endorsement to this Policy.

No fact pertaining to or knowledge or information possessed by any Insured Person shall be imputed to any other Insured Person for purposes of applying any Exclusion in Section IV. Only facts pertaining to or knowledge or information possessed by an officer, director or trustee of the Insured Organization shall be imputed to the Insured Organization for purposes of applying any Exclusion in Section IV.

## V. GENERAL CONDITIONS AND LIMITATIONS

### A.   LIMIT OF LIABILITY AND RETENTION

1)   The Insurer shall pay Loss in excess of the applicable Retention set forth in Item 4 of the Declarations up to the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations for the Policy Period set forth in Item 2 of the Declarations.

2)   Losses based upon or arising out of the same Wrongful Act or Related Wrongful Acts of one or more of the Insureds shall be considered a single Loss incurred as a result of a single Claim, which Claim shall be deemed to have been made on the date the first Claim for such Wrongful Act or for one or more of such Related Wrongful Acts is made against any of the Insureds, whether such date is before or after the Policy Inception Date. The applicable Retention shall apply only once to each such single Claim.

3)   If the Insured Organization is permitted or required by common or statutory law to ultimately indemnify the Insured Persons for any Loss, or to advance Defense Costs on their behalf, and does not in fact do so other than for reasons of Financial Insolvency, then any payment of such Loss or any advancement of such Defense Costs by the Insurer shall not be subject to any Retention amount. In that event, the Insured Organization shall reimburse and hold harmless the Insurer for such Loss up to the Retention amount set forth in Item 4(b) of the Declarations. For purposes of this Section V(A), the resolutions of the Insured Organization shall be deemed to provide indemnification for Loss to the fullest extent permitted by common or statutory law.

4)   If Loss resulting from a Claim is subject in part to no Retention and in part to the Retention for Indemnified Loss, the Retention set forth in Item 4(b) of the Declarations shall be applied only to that part of the Loss which is Indemnified Loss.

5)   With respect to any Claim, other than a Claim for Wrongful Employment Practices, the applicable Retention shall apply only to Defense Costs, not to any settlement, judgment or other damage.

6)   If a Claim, other than a Claim for Wrongful Employment Practices, is fully and finally resolved with prejudice with respect to all Insureds without any Insured becoming legally obligated to pay any judgment, settlement or damages (other than

Defense Costs) as the result of such Claim, no Retention shall apply with respect to such Defense Costs.

7)   Defense Costs shall be part of and not in addition to the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations, and Defense Costs shall reduce the maximum aggregate Limit of Liability.

8)   The amount set forth in Item 3 of the Declarations shall be the maximum aggregate Limit of Liability of the Insurer under the Policy for the Policy Period for all Loss resulting from all Claims, regardless of the time of payment by the Insurer.

### B.   NOTICE

1)   If during the Policy Period or Discovery Period, if purchased, any Claim is first made against any Insured, the Insureds as a condition precedent to their right to be reimbursed under this Policy, shall give to the Insurer written notice of any such Claim as soon as practicable but in no event later than thirty (30) days after the expiration date of the Policy or the Discovery Period (if applicable). The Insured shall give the Insurer such information and cooperation as it may reasonably require.

2)   If during the Policy Period the Insureds shall become aware of any Wrongful Act which may subsequently give rise to a

# SPECIMEN

Claim and shall give written notice to the Insurer as soon as practicable during the Policy Period or Discovery Period (if applicable), then any Claim subsequently made against the Insureds arising out of such Wrongful Act shall be deemed to have been made during the Policy Period. Such notice must articulate the full particulars as to the nature of the potential Claim, the date of the Wrongful Act, the persons involved and the reasons for anticipating a Claim.

3). Notice to the Insurer hereunder shall be addressed as stated in Item 8 of the Declarations. Except as otherwise provided in this Policy, all notices under this Policy shall be in writing and given by mail, prepaid express courier or facsimile properly addressed and shall be effective upon receipt.

C.   ACQUISITION OF PARENT ORGANIZATION

If during the Policy Period (1) the Parent Organization is acquired by merger into or consolidation with another organization, or (2) another organization, or person or group of organizations and/or persons acting in concert acquires the ability to control or direct the Parent Organization's managerial decisions or to select a majority of its trustees or directors, then coverage under this Policy shall continue until termination of the Policy Period, but only with respect to Claims for Wrongful Acts taking place prior to such merger, consolidation or acquisition. Upon the Insurer's receipt from the Insureds of notice of such merger, consolidation or acquisition, the Insurer shall promptly

provide to the Parent Organization alternative quotations for a three-year and six-year extension of coverage (or any lesser periods which the Insureds may request) with respect to Claims for such prior Wrongful Acts. Any coverage extension pursuant to such quotations shall be conditioned upon: (1) the Insureds giving to the Insurer written notice during the Policy Period of their desire to elect such extended coverage, (2) any premium paid or to be paid under this Policy being deemed fully earned upon inception of such coverage extension, (3) payment during the Policy Period by the Insureds of any additional premium required by the Insurer, and (4) the Insureds accepting any additional terms and conditions required by the Insurer.

The purchase of any such coverage extension shall not increase or reinstate the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations.

The Parent Organization shall give written notice of such merger, consolidation or acquisition to the Insurer as soon as practicable together with such information as the Insurer may require.

CIRI 72001 (06/98) Page 5 of 6

D.   SUBROGATION

If any payment is made under this Policy, the Insurer shall be subrogated to the extent of such payment to all of the Insureds' rights of recovery, including without limitation the Insured Persons' rights to indemnification or advancement from the Insured Organization. The Insureds shall execute all papers required and do everything necessary to secure such rights and to enable the Insurer to bring suit in their name.

E.   AUTHORIZATION AND NOTICES

By acceptance of this Policy, the Insureds agree that the Parent Organization will act on behalf of the Insureds with respect to:

1) the giving of all notices to the Insurer as provided herein,

2) the receiving of all notices from the Insurer,

3) the payment of premiums,

4) the receiving of any return premiums that may become due under this Policy,

5) the cancellation of this Policy, and

6) the negotiation, agreement to and acceptance of any endorsements or additional terms and conditions to this Policy.

F.   CANCELLATION

1) This Policy may be cancelled by the Insurer only for non-payment of premium when due provided the Insurer gives written notice to the Parent Organization stating when, not less than ten (10) days thereafter, such cancellation shall be effective.

2) By acceptance of this Policy, the Insureds grant the exclusive power and authority to cancel this Policy on their behalf to the Parent Organization, which may cancel this Policy by mailing to the Insurer written notice stating when thereafter such cancellation shall be effective. The mailing of such notice shall be sufficient notice, and the effective date of cancellation stated in the notice shall become the Policy Termination Date.

3) If this Policy is cancelled pursuant to Section V(F)(2), the earned premium shall be computed in accordance with the customary short rate table and procedure. If this Policy is cancelled pursuant to Section V(F)(1), the earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

G.   NON-RENEWAL

The Insurer may elect to non-renew this Policy only if it gives written notice of such non-renewal to the Parent Organization at least forty-five (45) days prior to the Policy Termination Date.

H   ACTION AGAINST INSURER

No action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance by the Insureds with all of the terms of this Policy; nor shall any such action lie until the amount of the Insured's obligation to pay shall

# SPECIMEN

have been finally determined either by judgment against an Insured after actual trial or by written agreement of the Insured, the claimant and the Insurer. No person or organization shall have any right under this Policy to join the Insurer as a party to any action against the Insureds to determine the Insurer's liability, nor shall the Insurer be impleaded by the Insureds or their legal representatives.

I.   ACCEPTANCE

By acceptance of this Policy, the Insureds agree that this Policy constitutes the entire agreement existing between them and the Insurer relating to this insurance.

J.   ALTERATION & ASSIGNMENT

No change in, modification of, or assignment of interest under this Policy shall be effective except when made by written endorsement to this Policy by an authorized employee or representative of the Insurer.

K.   OTHER INSURANCE

If any Loss otherwise covered under this Policy is insured under any other valid and collectible policy or policies, then this Policy shall apply only in excess of the amount of any deductibles, retentions and limits of liability under such other insurance, whether such other insurance is stated to be primary, contributory excess, contingent or otherwise unless such other insurance is written specifically excess of this Policy by reference in such other policy to the Policy Number of this Policy.

## VI. WARRANTIES AND COVENANTS

The Insureds warrant and agree as a condition to the Insurer's obligations hereunder, as follows:

1) The statements and representations made in the Application are the Insureds' statements and representations and are true. This Policy is issued in reliance upon the truth of such statements and representations.

2) In the event that any statement or representation in the Application is untrue, this Policy shall be void and of no effect whatsoever, but only with respect to:

(a) any Insured Person who had knowledge or information as of the Policy Inception Date of the facts that were not truthfully disclosed, and

(b) the Insured Organization if the person who signs the Application had knowledge or information as of the Policy Inception Date of the facts that were not truthfully disclosed.

Whether an Insured Person had such knowledge or information shall be determined without regard to whether the Insured Person actually knew the Application contained such untrue statement or representation.

IN WITNESS WHEREOF, the Company has caused this Policy to be signed by its authorized Company officers at Hartford, CT.

_Thomas M. Hunkel_

Executive Vice President

_Wendy C. Sky_

Corporate Secretary

CIRI 72001 (06/98) Page 6 of 6

# SPECIMEN



## IMPORTANT NOTICE REGARDING INDEPENDENT AGENT AND BROKER COMPENSATION

For information on how Travelers compensates independent agents and brokers, please visit www.Travelers.com, or you may request a written copy from Marketing at One Tower Square, 2GSA, Hartford, CT 06183.

ILT-1037 (04-05)

# SPECIMEN

ISSUED BY: Travelers Casualty and Surety Company of America          POLICY NO: 104979524

ISSUED TO: WINDMILL LAKES IV CONDOMINIUM ASSOCIATION, INC.

### FLORIDA AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:
**Non-Profit Management and Organization Liability Insurance Policy**

In consideration of the payment of premium, it is hereby understood and agreed that:

4.      Section VI, Warranties and Covenants, is deleted and replaced with the following:

VI.      REPRESENTATIONS AND COVENANTS

The Insureds hereby represent and agree as a condition to the Insurer's obligations hereunder, as follows:

1)      The statements and representations made in the Application are the Insureds' statements and representations, are true and shall be deemed material to the acceptance of the risk or the hazard assumed by the Insurer under this Policy. This Policy is issued in reliance upon the truth of such statements and representations.

2)      The truth of any statement or representation in the Application shall be determined without regard to whether any Insured knew the Application contained such untrue statement or representation.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above mentioned Policy, except as expressly stated herein. This endorsement is part of such Policy and incorporated therein.

_____

Authorized Representative

CIRI 71120 (08/96)

# SPECIMEN

ISSUED BY: Travelers Casualty and Surety Company of America          POLICY NO: 104979524

ISSUED TO: WINDMILL LAKES IV CONDOMINIUM ASSOCIATION, INC.

## DELETION OF AMENDED OPERATION OF RETENTION WORDING

This endorsement modifies insurance provided under the following:

**Non-Profit Management and Organization Liability Insurance Policy**

In consideration of the payment of the premium, Section **V. GENERAL CONDITIONS AND LIMITATIONS. A. LIMIT OF LIABILITY AND RETENTION.** 5) and 6) are deleted from the Policy and any endorsement thereto.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the inception date stated in Item 2 of the Declarations or effective at 12:01 A.M. on
    **August 6, 2008** , if indicated herein. Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the inception of the policy.

_____

Authorized Representative

CIRI 72023 (01-03)

# SPECIMEN

ISSUED BY: Travelers Casualty and Surety Company of America          POLICY NO: 104979524

ISSUED TO: WINDMILL LAKES IV CONDOMINIUM ASSOCIATION, INC.

## AMENDED DEFINITION OF INSURED TO INCLUDE PROPERTY MANAGER

This endorsement modifies insurance provided under the following:
Non-Profit Management and Organization Liability Insurance Policy

In consideration of the payment of premium:

1.    Section II. DEFINITIONS, sub-paragraph G. Insured is amended to include:

   a.    any independent management organization under a written contractual agreement solely with the **Insured Organization** (a "Property Manager") and

   b.    any director, officer or employee of a Property Manager

   but only while performing property management services for the **Insured Organization** which are enumerated in such written contractual agreement.

2.    Section IV. EXCLUSIONS is amended by adding the following:

   brought or maintained by or on behalf of the **Insured Organization** against any **Insured** added pursuant to paragraph 1 of this endorsement;

3.    If any **Claim** made against a Property Manager or any director, officer or employee thereof gives rise to coverage both under this Policy and under any other liability policy of similar insurance issued by the Insurer or any of its affiliates, the Insurer's maximum aggregate limit of liability under all such policies for all **Loss**, including **Defense Costs**, from such **Claim** shall not exceed $1,000,000.00 subject to the remaining Limits of Liability of such policies.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein.  This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the inception date stated in Item 2 of the Declarations or effective at 12:01 A.M. on
      August 6, 2008 , if indicated herein.  Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the inception of the policy.

Accepted by:    _____

                On behalf of the entity named in
                ITEM 1 of the Declarations.

                _____

                Authorized Company Representative

CIRJ 70064 (04-00)

# SPECIMEN

ISSUED BY: Travelers Casualty and Surety Company of America          POLICY NO: 104979524
ISSUED TO:

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM ENDORSEMENT

It is agreed that:

1.  The following section is added to this Policy:

    **CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM**

    If aggregate insured losses attributable to **Certified Acts of Terrorism** exceed $100 billion in a program year (January 1 through December 31) and the insurer issuing this Policy has met the deductible under the Terrorism Risk Insurance Act:

    a.   the insurer will not be responsible for the payment of any portion of the amount of such losses that exceeds $100 billion; and

    b.   insured losses up to $100 billion will be subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

    The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Policy.

2.  The following is added to the Definitions section of this Policy:

    **"Certified Act of Terrorism"** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a **Certified Act of Terrorism** include the following:

    a.   the act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

    b.   the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the Inception Date stated in ITEM 2 of the Declarations or effective at 12:01 A.M. on
   **August 6, 2008** , if indicated herein. Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the Inception Date of the policy.

Accepted by:   _____
                     On behalf of the entity named in
                     ITEM 1 of the Declarations.

                     _____
                     Authorized Company Representative

© 2008 The Travelers Companies, Inc. All Rights Reserved
ILT-1067   Ed. 01/08

# SPECIMEN

ISSUED BY: Travelers Casualty and Surety Company of America          POLICY NO: 104979524

ISSUED TO: WINDMILL LAKES IV CONDOMINIUM ASSOCIATION, INC.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ADD/DELETE ENDORSEMENT**

In consideration of the payment of the                    premium of

    The following endorsement(s) have been added to the policy:

    ILT-1067

    The following endorsement(s) have been deleted from the policy:

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein.  This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the Inception Date stated in the Declarations or effective at 12:01 A.M. on August 6, 2008 if indicated herein.  Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the Inception Date of the policy.

Accepted by:      _____
                  On behalf of the entity named in
                  ITEM 1 of the Declarations.

                  _____
                  Authorized Company Representative

ILT-1021 (10-04)

# SPECIMEN

ISSUED BY: Travelers Casualty and Surety Company of America          POLICY NO: 104979524

ISSUED TO: WINDMILL LAKES IV CONDOMINIUM ASSOCIATION, INC.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

CLAIMS AGAINST BUILDER/DEVELOPER

This endorsement modifies insurance provided under the following:
Non-Profit Management and Organization Liability Insurance Policy

In consideration of the premium charged,

1.    For purposes of this endorsement, the following terms have the following meanings:

      a.    "Builder/Developer Board Member" means any person appointed or elected to serve on the board of directors of the **Parent Organization** by the builder, developer or sponsor of the **Parent Organization**, and who was both a director or officer of the **Parent Organization** and a director, officer, employee or agent of such builder, developer, or sponsor of the **Parent Organization**;

      b.    "Policy Year" means each year of the **Policy Period** beginning with the **Policy Inception Date** and ending one year thereafter and each successive year until canceled or non-renewed.

2.    The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any Builder/Developer Board Member after the end of the Policy Year in which such Builder/Developer Board Member ceases to serve on the board of directors of the **Parent Organization**.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the inception date stated in Item 2 of the Declarations or effective at 12:01 A.M. on
    **August 6, 2008** , if indicated herein. Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the inception of the policy.

Accepted by:        _____

            On behalf of the entity named in
            ITEM 1 of the Declarations.

            _____

            Authorized Company Representative

CIRI 70008 (12-02)

# SPECIMEN

ISSUED BY: Travelers Casualty and Surety Company of America          POLICY NO: 104979524

ISSUED TO: WINDMILL LAKES IV CONDOMINIUM ASSOCIATION, INC.

## MULTI - YEAR POLICY PERIOD ENDORSEMENT

This endorsement modifies insurance provided under the following:
**Non-Profit Management and Organization Liability Insurance Policy**

In consideration of the payment of the premium:

1. Section II. **DEFINITIONS** is amended to include the following:

   Policy Year means, within the Policy Period, the period of one year following the Policy Inception Date of this Policy or any anniversary thereof, or if the time between the Policy Inception Date or any anniversary and the Policy Termination Date of the policy is less than one year, such lesser period.

2. Section III. **EXTENSIONS C. DISCOVERY PERIOD**, sub-paragraph 4) is deleted and replaced in its entirety by the following:

   4)   The Discovery Period, if purchased, shall be treated as part of the last Policy Year prior to the inception of the Discovery Period and not an additional period. The Limit of Liability in respects to Claims made during the Discovery Period shall be part of, and not in addition to the applicable maximum Limit of Liability for Claims made or deemed made during such last Policy Year.

3.   Section V. **GENERAL CONDITIONS AND LIMITATIONS, A.  LIMIT OF LIABILITY AND RETENTION** is deleted in its entirety and replaced by the following:

   A.     **LIMIT OF LIABILITY AND RETENTION**

   1)   The Insurer shall pay Loss in excess of the applicable Retention set forth in Item 4 of the Declarations up to the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations for all Claims made or deemed made during the applicable single Policy Year.

   2)   Losses based upon or arising out of the same Wrongful Act or Related Wrongful Acts of one or more of the Insureds shall be considered a single Loss incurred as a result of a single Claim, which Claim shall be deemed to have been made on the date the first Claim for such Wrongful Act or for one or more of such Related Wrongful Acts is made against any of the Insureds, whether such date is before or after the Policy Inception Date. The applicable Retention shall apply only once to each such single Claim.

   3) If the Insured Organization is permitted or required by common or statutory law to ultimately indemnify the Insured Persons for any Loss, or to advance Defense Costs on their behalf, and does not in fact do so other than for reasons of Financial Insolvency, then any payment of such Loss or any advancement of such Defense Costs by the Insurer shall not be subject to any Retention amount. In that event, the Insured Organization shall reimburse and hold harmless the Insurer for such Loss up to the Retention amount set forth in Item 4(b) of the Declarations. For purposes of this Section V(A), the resolutions of the Insured Organization shall be deemed to provide indemnification for Loss to the fullest extent permitted by common or statutory law.

CIRI 70003 FL (08/98)                                                          Page 1 of 3

# SPECIMEN

4) If Loss resulting from a Claim is subject in part to no Retention and in part to the Retention for Indemnified Loss, the Retention set forth in Item 4(b) of the Declarations shall be applied only to that part of the Loss which is Indemnified Loss.

5) With respect to any Claim, other than a Claim for Wrongful Employment Practices, the applicable Retention shall apply only to Defense Costs, not to any settlement, judgment or other damage.

6) If a Claim, other than a Claim for Wrongful Employment Practices, is fully and finally resolved with prejudice with respect to all Insureds without any Insured becoming legally obligated to pay any judgment, settlement or damages (other than Defense Costs) as the result of such Claim, no Retention shall apply with respect to such Defense Costs.

7) Defense Costs shall be part of and not in addition to the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations, and Defense Costs shall reduce the maximum aggregate Limit of Liability.

8) The amount set forth in Item 3 of the Declarations shall be the maximum aggregate Limit of Liability of the Insurer for all Loss from all Claims or Related Claims made or deemed to be made during any single Policy Year, regardless of the time of payment by the Insurer.

4. Section V. **GENERAL CONDITIONS AND LIMITATIONS, B. NOTICE,** sub-paragraph 2) is deleted and replace by the following:

2) If during the Policy Period the Insureds shall become aware of any Wrongful Act which may subsequently give rise to a Claim and shall give written notice to the Insurer as soon as practicable during the Policy Period or Discovery Period (if applicable), then any Claim subsequently made against the Insureds arising out of such Wrongful Act shall be deemed to have been made during the Policy Year in which such written notice was made by the Insured. Such notice must articulate the full particulars as to the nature of the potential Claim, the date of the Wrongful Act, the persons involved and the reasons for anticipating a Claim.

5. Section V. **GENERAL CONDITIONS AND LIMITATIONS, F. CANCELLATION** sub-paragraph 1) is deleted in its entirety and replaced by the following:

1) Cancellation of Policy or Insuring Agreement: This Policy terminates in its entirety upon occurrence of any of the following:

Cancellation For Policies In Effect 90 Days Or Less

If this Policy has been in effect for 90 days or less, the Insurer may cancel this Policy by mailing or delivering to the Parent Organization written notice of cancellation, accompanied by the reasons for cancellation, at least:

(1) 10 days before the effective date of cancellation if the Insurer cancels for nonpayment of premium.

(2) 60 days before the effective date of cancellation if the Insurer cancels for any other reason, except the Insurer may cancel immediately if there has been:

(a) A material misstatement or misrepresentation; or

(b) A failure to comply with underwriting requirements established by the Insurer.
Cancellation for policies in effect for more than 90 days

CIRI 70003 FL (08/98)                                                      Page 2 of 3

**SPECIMEN**

If this Policy has been in effect for more than 90 days, the Insurer may cancel this Policy only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) The Policy was obtained by a material misstatement;

(3) There has been a failure to comply with underwriting requirements within 90 days of the effective date of coverage;

(4) There has been a substantial change in the risk covered by the Policy; or

(5) The cancellation is for all insureds under such policies for a given class of insureds.

If the Insurer cancels this Policy for any of these reasons, the Insurer will mail or deliver to the Parent Organization written notice of cancellation, accompanied by the reasons for cancellation, at least:

(a) 10 days before the effective date of cancellation if cancellation is for the reason stated in (1) above; or

(b) 60 days before the effective date of cancellation if cancellation is for the reasons stated in (2), (3), (4) or (5) above.

6. The phrase "the Policy Period" in ITEM 3. **LIMIT OF LIABILITY** of the Declarations is deleted and replaced by the phrase "a Policy Year":

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the inception date stated in Item 2 of the Declarations or effective at 12:01 A.M. on **August 6, 2008**, if indicated herein. Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the inception of the policy.

_____

Authorized Representative

# SPECIMEN

ISSUED BY: Travelers Casualty and Surety Company of America          POLICY NO: 104979524

ISSUED TO: WINDMILL LAKES IV CONDOMINIUM ASSOCIATION, INC.

## PREMIUM INSTALLMENT ENDORSEMENT

This endorsement modifies insurance provided under the following:
**Non-Profit Management and Organization Liability Insurance Policy**

It is agreed that the premium for the **Policy Period** shown in Item 2. of the declarations is
$2,928.75 ,payable from inception of Policy in equal annual installments of $976.25

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above mentioned policy, except as expressly stated herein.  This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the inception date stated in Item 2 of the Declarations or effective at 12:01 A.M. on
    **August 6, 2008**, if indicated herein. Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the inception of the policy.

_____
Authorized Representative

CIRI 70002 (08/98)

# SPECIMEN

ISSUED BY: Travelers Casualty and Surety Company of America      POLICY NO: 104979524

ISSUED TO: WINDMILL LAKES IV CONDOMINIUM ASSOCIATION, INC.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AMENDED BI/PD EXCLUSION

In consideration of the payment of the premium:

1.    Section IV. **EXCLUSIONS** 1) is deleted and replaced by the following:

   1)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving bodily injury, sickness, mental anguish, emotional distress, disease or death of any person, provided, that this exclusion shall not apply to allegations of mental anguish or emotional distress if and only to the extent that such allegations are made as part of a Claim for **Wrongful Employment Practices**;

2.    Section IV. **EXCLUSIONS** is amended by adding the following exclusion:

   for or arising out of any damage, destruction, loss of use or deterioration of any tangible property including without limitation, construction defects, whether or not as a result of faulty or incorrect design or architectural plans, improper soil testing, inadequate or insufficient protection from soil and/or ground water movement, soil subsidence, mold, toxic mold, spores, mildew, fungus, or wet or dry rot, or the supervision of actual construction, manufacturing or assembly of any tangible property;

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the Inception Date stated in ITEM 2 of the Declarations or effective at 12:01 A.M. on **August 6, 2008** , if indicated herein. Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the Inception Date of the policy.

Accepted by:    _____

                 On behalf of the entity named in
                 ITEM 1 of the Declarations.

                 _____

                 Authorized Company Representative

CIRI-70007 (02-02)

# SPECIMEN

ISSUED BY: Travelers Casualty and Surety Company of America     POLICY NO: 104979524

ISSUED TO: WINDMILL LAKES IV CONDOMINIUM ASSOCIATION, INC.

## NON-PROFIT CHANGE ENDORSEMENT

This endorsement modifies insurance provided under the following:
Non-Profit Management and Organization Liability Insurance Policy

In consideration of the payment of the premium:

1.  Section I. INSURING AGREEMENTS A. Liability Coverage is deleted in its entirety and replaced by the following:

    A.  The Insurer will pay on behalf of the Insureds Loss up to the available maximum aggregate Limit of Liability set forth in Item 3 of the Declarations which is incurred by the Insureds as the result of any Claim first made against the Insureds during the Policy Period or the Discovery Period, if purchased, for a Wrongful Act.

2.  Section II. DEFINITIONS B. "Claim" sub-paragraph 1) is deleted in its entirety and replaced by the following:

    1)  a written demand for monetary or non-monetary relief;

3.  Section II. DEFINITIONS J. "Loss" is deleted in its entirety and replaced by the following:

    J)  Loss means the total amount excess of the applicable Retention which any Insured becomes legally obligated to pay as the result of all Claims first made against any Insured during the Policy Period for Wrongful Acts including, but not limited to, damages (including punitive or exemplary damages where insurable under applicable law), judgments, settlements and Defense Costs. Loss does not include (1) the multiple portion of any multiple damage award, (2) criminal or civil fines or penalties imposed by law, (3) taxes, (4) any amount not indemnified by the Insured Organization for which the Insured is absolved from payment by reason of any covenant, agreement or court order, and (5) matters uninsurable under the law pursuant to which this Policy is construed.

4.  Section IV. EXCLUSIONS 6) is deleted in its entirety.

5.  Section IV. EXCLUSIONS 9) is deleted in its entirety and replaced by the following:

    9)  for liability under or breach of any oral, written or implied contract or agreement, or for liability of others assumed by the Insured under any such contract or agreement; provided however, this exclusion shall not apply to (a) the Insurer's duty to defend and to pay Defense Costs regarding such Claim; (b) the extent the Insured would have been liable in the absence of such contract or agreement; or (c) the extent the Claim is a Claim for Wrongful Employment Practices;

CIRI 70004 (04-00)

Page 1 of 2

# SPECIMEN

6.      The Insurer shall not be liable to make any payment for Loss, other than **Defense Costs**, in connection with any **Claim** made against any of the **Insureds** which constitute costs and expenses incurred or to be incurred to comply with an order, judgment or award of injunctive or other equitable relief of any kind, or that portion of a settlement encompassing injunctive or other equitable relief, including but not limited to actual or anticipated costs and expenses associated with or arising from an **Insured's** obligation to provide reasonable accommodations under, or otherwise comply with, the Americans with Disabilities Act or the Rehabilitation Act of 1973, including amendments thereto and regulations thereunder, or any related or similar law or regulation.

7.      Section V. **GENERAL CONDITIONS AND LIMITATIONS, B. NOTICE,** sub-paragraph 1) is deleted in its entirety and replaced by the following:

        1)  If during the **Policy Period** or **Discovery Period**, if purchased, any **Claim** is first made against any **Insured**, the **Insureds** as a condition precedent to their right to be reimbursed under this Policy, shall give to the Insurer written notice of any such **Claim** as soon as practicable.  The **Insured** shall give the Insurer such information and cooperation as it may reasonably require.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein.  This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the inception date stated in Item 2 of the Declarations or effective at 12:01 A.M. on
    **August 6, 2008** , if indicated herein.  Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the inception of the policy.

Accepted by:        _____
                      On behalf of the entity named in
                      ITEM 1 of the Declarations.

                      _____

                      Authorized Company Representative

# SPECIMEN

ISSUED BY: Travelers Casualty and Surety Company of America          POLICY NO:   104979524

ISSUED TO: WINDMILL LAKES IV CONDOMINIUM ASSOCIATION, INC.

## NUCLEAR BROAD FORM EXCLUSION

This endorsement modifies insurance provided under the following:
**Non-Profit Management and Organization Liability Insurance Policy**

A.   This Policy does not apply:

  1.   To Loss

      a.   with respect to which an Insured under this Policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada or any of their successors, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

      b.   resulting from the Hazardous Properties of Nuclear Material and with respect to which (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (ii) the Insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any Agency thereof with any person or organization; or

  2.   To Loss resulting from the Hazardous Properties of Nuclear Material, if

      a.   the Nuclear Material (i) is at any Nuclear Facility owned by, or operated by or on behalf of an Insured (ii) has been discharged or dispersed therefrom;

      b.   the Nuclear Material is contained in Spent Fuel or Waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **Insured**; or

      c.   the Loss arises out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any Nuclear Facility, but if such Nuclear Facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to Loss to such Nuclear Facility and any property thereat.

B.   As used in this Endorsement:

  1.   "Hazardous Properties" include radioactive, toxic or explosive properties.

  2.   "Nuclear Material" means Source Material, Special Nuclear Material or Byproduct Material.

  3.   "Source Material," "Special Nuclear Material" and "Byproduct Material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

72047 (08-1996)                                                    Page 1 of 2

# SPECIMEN

4.  "Spent Fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a Nuclear Reactor.

5.  "Waste" means any waste material (a) containing Byproduct Material other than the tailing or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its Source Material content and (b) resulting from the operation by any person or organization of any Nuclear Facility included within the definition of Nuclear Facility under paragraph (a) or (b) thereof.

6.  "Nuclear Facility" means

    a.  any Nuclear Reactor;

    b.  any equipment or device designed or used for (i)separating the isotopes of uranium or plutonium, (ii) processing or utilizing Spent Fuel, or (iii) handling, processing or packaging Waste;

    c.  any equipment or device used for the processing, fabricating or alloying of Special Nuclear Material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more that 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    d.  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of Waste and includes the site on which any of the foregoing is located, all operation conducted on such site and all premises used for such operations.

7.  "Nuclear Reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

8.  "Insured" means the **Insured Organization** and shall also mean the **Insured Persons.**

9.  "Loss" includes all forms of radioactive contamination of property.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the inception date stated in Item 2 of the Declarations or effective at 12:01 A.M. on **August 6, 2008,** if indicated herein. Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the inception of the policy.

_____

Authorized Representative

# SPECIMEN



**TRAVELERS**

Jessica M. Mendelsohn

Associate Claim Counsel
Travelers
Bond Claim – Hartford, CT

(860) 277-0700
(888) 201-5587 (fax)

JMENDELS@travelers.com

One Tower Square, 2S2
Hartford, CT  06183

May 6, 2009

Ray Vouse
Windmill Lakes IV Condominium Association, Inc.
C/o Victory Accounting Svc
PO Box 243399
Boynton Beach, FL 33424

Re:   Insured:        Windmill Lakes IV Condominium Association, Inc.
      Policy No.:     049-LB-104979524
      Reference No.: 197-DON-T0907610-NR
      Subject:        Timberoof Roofing Co., Inc.

Dear Mr. Vouse:

We have reviewed the materials provided to us thus far regarding the above referenced matter and Non-Profit Management and Organization Liability Insurance Policy ("Policy"). Based upon this review, we have determined that there is no coverage under the Policy in this matter. The basis for our decision is set forth below. Many of the terms in this letter are defined in the Policy; therefore, please refer to the Policy for the meanings of those terms.

Travelers issued the referenced Policy to Windmill Lakes IV Condominium Association, Inc. (the "Insured" or the "Association") for the Policy Period of August 6, 2008 to August 6, 2011. The Insuring Agreement in *Section I* of the Policy, as modified by *Endorsement CIRI 70004*, states that Travelers will pay on behalf of the Insured(s) Loss up to the available maximum aggregate limit of liability set forth in Item 3 of the Declarations which is incurred by the Insureds as the result of any Claim first made against the Insureds during the Policy Period or the Discovery Period, if purchased, for a Wrongful Act. Travelers' limit of liability, inclusive of Defense Costs, is $1,000,000.00, with a $1,000.00 retention.

While it is necessary to review the allegations against the Insured as they relate to coverage under the Policy, by doing so Travelers does not wish to suggest that they have any merit. We have received and reviewed the Award of the Arbitrator in the matter of Timberoof Roofing Co., Inc. v. Windmill Lakes IV Condo Association, Inc. Apparently, a hearing was scheduled for November 18, 2008. Vicki Feicht, registered agent for the Association, had been given notice of the hearing but no one on behalf of the Association participated. The Hearing was reconvened on December 8, 2008 and again no one from the Association attended. Ultimately, an award was entered by the Arbitrator. The Arbitrator awarded the Claimant damages in the amount of $258,317.31, pre-hearing interest in the amount of $47,558.69, fees in the amount of $5,125.00, interest at 8%. The Arbitrators award is a full and complete resolution of all claims submitted to the Arbitration.

We have also received and reviewed a copy of the Motion to Vacate and Set Aside Arbitration Award filed by the Windmill Lakes IV Condominium Association. The Association maintains that it is entitled to relief from the award because (a) there is excusable neglect on the part of the Association; (b) the Association has defenses to the claims; (c) the Association acted promptly and with due diligence in seeking to set the award aside.



EXHIBIT
B

09-154

Page 2

At the outset of this analysis, we refer you to the definition of the term Claim, as defined in Section II. Definitions B. of the Policy and the Non-Profit Change Endorsement.  **Claim** means:

> 1)  a written demand for monetary relief or non-monetary relief;
> 2)  a civil proceeding commenced by the service of a complaint or similar pleading;
> 3)  a criminal proceeding commenced by a return of an indictment; or
> 4)  a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document,

> against an Insured for a Wrongful Act, including appeal therefrom.

Both Insured(s) and Wrongful Acts are defined in Section II of the Policy, as follows:

> **Insured(s)** means the Insured Organization and the Insured Person(s). **Insured Person(s)** means any persons who were, now are, or shall become: (1) duly elected or appointed directors, trustees or officers of any Insured Organization; or (2) employees, members of duly constituted committees or volunteers of any Insured Organization that is a non-profit entity.

> **Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed or attempted, or allegedly committed or attempted, by the Insured Organization or by one or more Insured Persons individually or collectively, in their respective capacities as such, including but not limited to any Wrongful Employment Practices.

In accordance with the above definitions, the referenced matter appears to constitute a **Claim** within the meaning of the Policy.  However, please note that a condition precedent to coverage is that a **Claim** be *reported in a timely manner*. Although the Association's registered agent received notice of the Arbitration hearing in September 2008, the Association waited until April 23, 2009, seven months later, to report anything to Travelers.  Moreover, an award had already entered by the time Travelers received notice of the Claim.  In this regard, we direct your attention to *Section V.B.I.* of the Policy, as amended by *Endorsement CIRI-70004*, and *Section V.B.II.* of the Policy, which state:

> 1)  If during the **Policy Period** or **Discovery Period**, if purchased, any **Claim** is first made against any Insured, the Insured shall give to the Insurer written notice of any such Claim *as soon as practicable*. The Insured shall give the Insurer such information and cooperation as it may reasonably require

> 2)  If during the **Policy Period** or **Discovery Period**, the Insureds shall become aware of any Wrongful Act which may subsequently give rise to a **Claim** and shall give written notice to the Insurer as soon as practicable during the **Policy Period** or **Discovery Period** if purchased, then any **Claim** subsequently made against the Insureds arising out of such Wrongful Act shall be deemed to have been made during the **Policy Period**.  Such notice must articulate the full particulars as to the nature of the potential **Claim**, the date of Wrongful Act, the persons involved and the reasons for anticipating a **Claim**.

Further, *Section B* of the Insuring Agreements states in part:

> The Insureds agree to provide the Insurer with all information, assistance and cooperation which the Insurer reasonably requests and agree that in the event of a **Claim** the Insureds will do nothing that may prejudice the Insurer's position or its potential or actual rights of recovery.

Page 3

As stated, a condition precedent to coverage under the Policy is that a Claim be reported in a timely fashion. In the present case, a delay of seven months was certainly not "*as soon as practicable*," especially considering that arbitration had already taken place and an award had been entered against the Association by the time Travelers was put on notice.

By providing such late notice, the Association has deprived Travelers of necessary and important involvement in the evolution of this Claim; and further, has prevented Travelers from participating in important decisions regarding strategy and settlement. As a result of the Association's actions, an award against the Association has been entered. Arguably, this Award could have been prevented had the Insured simply provided timely notice to Travelers in accordance with the Insured's obligations under the Policy. This delay constitutes a breach of the insurance contract and coverage for this Claim is therefore denied.

In the event that the Insured is successful with their pending Motion to Vacate and Set Aside Arbitration Award, please notify Travelers and we will reevaluate our position at that time. However, please understand that in no event would coverage be provided for defense costs incurred in vacating and setting aside the Award. Moreover, please note *Section IV. Exclusions 9.* of the Policy, amended by *Endorsement CIRI-70004.* This section precludes coverage for liability under breach of any oral, written or implied contract or agreement, or for liability of others assumed by the Insureds under any such contract or agreement; provided, however, this exclusion shall not apply to (a) the Insurer's duty to defend and to pay Defense Costs regarding such **Claim**; (b) the extent the Insureds would have been liable in the absence of such contract or agreement; or (c) the extent the Claim is a Claim for Wrongful Employment Practices. Therefore, if said Motion for Relief from Judgment is granted and if Travelers agrees to provide a Defense to the Insured, Travelers would not be responsible for any loss associated with any damages in connection a breach of contract.

In accordance with the foregoing and for at least the reasons set forth above, coverage for this matter is not available under the referenced Policy. Consequently, Travelers will be providing neither a defense nor indemnification in connection with this matter and/or any related claims. We suggest that, if not done so already, this matter be submitted to your Commercial General Liability insurer for review under its applicable Policy of insurance and for a determination of any existing obligations under that Policy.

As these issues resolve the coverage determination, we will not undertake an exhaustive review of all coverage issues at this time. However, Travelers continues to reserve its rights, remedies and defenses under the Policy. Neither this letter, nor any actions by Travelers or by any of its agents, shall constitute or be deemed a waiver, estoppel, admission of liability or prejudice of any kind to Travelers' rights and defenses under the Policy, by law, or otherwise.

Very Truly Yours,

Jessica M. Mendelsohn

cc:    Jane Eichner Flack
       Corporate Insurance Advisors
       100 NE 3rd Ave. Ste 610
       Ft. Lauderdale, FL 33301